Arthur Markewich, J.
Petitioner in this article 78 proceeding is a tenant, one of a group who initiated the protest proceeding that resulted in the order under review. The Administrator and the landlord intervenor are respondents. The landlord had sought permission to convert the elevators in an apartment building containing many small units from manual to automatic operation and to eliminate switchboard service. The latter was denied and elevator conversion was permitted upon stated conditions. Upon protest, the matter was remanded to the local rent office for further investigation into the basis of the application as it pertained to the switchboard. The local rent office then made an order permitting switchboard removal conditioned, however, upon conversion of the elevators. Upon protest, the Administrator permitted separability, i.e., removal of the switchboard upon stated conditions even though the landlord might elect not to convert the elevators. The instant proceeding is directed to the switchboard aspect of the order only; the elevator order was apparently accepted.
It is stated — perhaps understated — in the opinion and order under review that “ this is a complicated proceeding ” (p. 20). Having so termed it, respondents have oversimplified it by relying exclusively upon two cases reported as Matter of Ellinger v. McGoldrick (281 App. Div. 821) to support the order here reviewed. The order states that “ each building presents unique problems and therefore conditions which may be proper for one building may not reasonably be imposed upon a landlord of another building and vice versa ” (p. 7). Then, upon no showing apparent in the record, the Administrator finds a parallel between the instant case and the Ellinger cases, this despite their different treatment in the Administrator’s memorandum of law here and that filed in the Ellinger case itself (as quoted in his brief here). The order reviews the history of the regulation of elevator and switchboard operation and the element of protection and concludes that the policy *27 of considering lobby protection as an essential service was finally established in Matter of Jerlan Holding Corp. v. McGoldrick (281 App. Div. 545). The order then goes on to recite a long list of reasons given for maintenance of switchboard service, both as part of the pattern of protection to tenants and as an important portion of the service rendered to them, particularly during their absences from the premises (pp. 8-9). The switchboard complex of services is described in all its ramifications. Further, the order says that “ the landlord apparently is not claiming inaction or non-user of the switchboard as a basis for its request” and “ the landlord has not submitted the number of telephone calls made over the switchboard ” (p. 13).
Then, despite all the foregoing and without ruling as to the essentiality or nonessentiality of the switchboard complex, the arguments for retention thereof are dismissed in these few words: ‘ ‘ The privilege of continuous outgoing and incoming telephone service plus the privilege of 24 hours of message-taking service per day regardless of the number, if any, of outgoing telephone calls made for $1.13 per month plus 16$ per outgoing call made, and the important privilege of free telephone calls to the nine stores in the building, is a convenience that cannot easily be duplicated by the mere installation, cost free, of a private telephone in a tenant’s apartment subject thereafter to a minimum monthly charge irrespective of the number of calls made.” (Pp. 14r-15.) This omission to include all the other services in this vital statement masks the lack of a clear and direct finding as to whether the switchboard complex constituted essential service. The subject building is not a hotel, but the many quasi-hotel services furnished seem clearly to render the switchboard services essential (see Matter of Schirford Realty Corp. v. Weaver, 9 Misc 2d 388). Therefore, it is deemed essential to any proper administrative opinion and order in this case to have a finding made as to whether the services sought to be cut off: are essential or a mere convenience for which a substitute may be provided.
Nor is this all. To return to the matter of lobby security, it is to be borne in mind that, on the way to the final order under review, one of the interim orders conditioned switchboard removal upon elevator conversion. Though, upon protest, the final order ruled for separability of the two, the rather obtuse interlocking conditions surrounding the conversion process refer here and there to switchboard operators, apparently as a continued integral part of the pattern. But, even when under much re-examination, parts of the conditions become clear, one point *28 stands out clearest of all: whether called switchboard operator or lobby attendant, security demands the presence of an employee in the lobby. It would appear, unless some clear finding explains otherwise, that the presence of a switchboard operator may well be more than a convenience.
If the order here reviewed correctly reflects the consideration given the important problem presented by the projected change, then something more is required. The motion is granted to the extent of remanding the matter to the Administrator for further consideration and processing, which shall include the making of a clear, specific and direct finding as to the essentiality of the switchboard services and which shall also include a clarification of the interrelationship of elevator conversion and whatever may be directed as to the switchboard.
Settle order.